Good morning, Your Honors. I'm Jeffrey Baird, representing Mr. Brown in this Social Security Disability case. I'd like to reserve a couple of minutes for rebuttal. The ALJ did not give a good interpretation, a rational interpretation of Dr. Cavell's opinion. Dr. Cavell made very vivid findings in examining Mr. Brown, that he had to use his fingers to count backwards, that he couldn't spell the word world at all, and couldn't spell it backwards once given the letters. He needed three prompts to remember three items. He could not perform a three-step instruction. He kept forgetting one of the steps and didn't seem to notice. So she decided that he could probably do two-step instruction. Well, she didn't say, other than in her findings. She did limit him to simple instructions. But one has to infer she meant two-step instructions, because he vividly showed he couldn't do three. That was in her own findings. But that's an important limitation to have in the RFC, because a limitation to two-step simple instructions would be reasoning level one jobs in the Dictionary of Occupational Titles. So it's a distinctive and important limitation beyond simple repetitive tasks. The ALJ didn't seem to notice that and simply gave full deference to Dr. Cavell. But she also found, Dr. Cavell found, that the claimant would have a fair amount of difficulty with attention and distractibility, distracted by depressive rumination as well as his sort of cognitive slowness. She also said that he might have trouble with regular work attendance and persistence in tasks. I wish she'd been more specific, but those were cautions she raised. And against this backdrop of findings, she said he had a global assessment of functioning of 50, which would ordinarily indicate serious impairment in social and occupational functioning. She may well have based it on his symptoms partly, but she took a long history with him. She gave him interview data and never doubted any of it. She gave credence to him in context with her examination of him. So she accepted his symptom statements. And the GAF would represent a global diminishment of ability to sustain regular and continuing work. The ALJ simply said, I accept everything and simple repetitive tasks and that's that. The other issue I wanted to get to was the hands. There's a stretch of time where the claimant is in need of surgery for Carpal Tunnel Syndrome. In March 2010, his treating physician found moderate to severe Carpal Tunnel Syndrome on the right and mild to moderate on the left and recommended surgery. There was a surgery 18 months later with Dr. Stewart and that appeared to be successful, although the claimant later complained at the hearing he still had numb hands. Didn't the ALJ point to inconsistencies between Brown's testimony or client's testimony about the severity of his mental impairments and other reports that he gave as to those impairments? And didn't the ALJ specifically point to specific inconsistencies? Did he have made inconsistent statements at various points in the record? I think he did make some inconsistent statements. But that appears to be part of his general maladaptive personality traits. If you read through the hearing testimony, he's very sincere but very idiosyncratic. And he does say one thing consistently that he has trouble attending or paying attention for long periods. For example, he had to get up during his classes, the two-hour class. He couldn't sustain that. He'd have to get up and walk around or leave. And he gave various reasons, including sort of emotional reasons to leave. She was talking about serial killers or whatever. So he has to take breaks. He explained he had to take breaks riding the bus. He was able to do public transportation and the ALJ relied on that. But he also explained he was taking breaks. And that is what's really the problem here, is the inability to sustain attention for extended periods and the need for special breaks. Or even the need for special supervision if he can't remember three items without three prompts. If he can't continue in conversation, as Dr. Cavell found, without occasional prompting to redirect him on the conversation. Go back to your, you had started down the carpal tunnel path. But his own doctor, his treating physician, actually said he had the full range of motion in his hands and fingers both before and after. That's pretty powerful. Well, but the ALJ also accepted Dr. Dittmer's findings of moderate to severe carpal tunnel on the right that required surgery. And mild to moderate on the left. It required surgery. But you don't have that if you have this full range of motion. Well, the surgery may have been successful, but there's an 18-month period. Remember, the duration requirement is... The testimony is before and after. Well, the surgery may have reduced the carpal tunnel syndrome. My argument is that for 18 months, more than the 12-month duration requirement, he couldn't possibly have performed the jobs the VE identified because they required frequent handling. If he had moderate to severe carpal tunnel syndrome requiring surgery for 18 months, he couldn't have done frequent handling, and he couldn't have done those jobs. So that would at least be a reason for remand for further proceedings to explore that. Although he also probably should have been limited to sedentary work because he could only stand and walk two hours with his disc degeneration and his obesity. But that would mean something less than frequent handling, and sedentary work would suggest he couldn't perform the jobs the VE found or any others during that 18-month gap. As it regards his credibility, so many of these cases are like this. He's a funny guy, but I believe in the hearing, he comes through as sincere. And some things he says are dramatic, but some things he says are measured. And the most important thing he was saying was, can't finish watching a movie. He might watch TV all day, but he doesn't really attend to the movie for two hours. He couldn't stay in class for two hours. He got Ds and Fs at his community college. He needed breaks riding the bus. I doubt he would have the wherewithal to know that that matters in Social Security, the two-hour increments or extra breaks are so crucial for unskilled work. He wouldn't have known that. He simply reported his experience. So if there's no further questions, I'll reserve my time to battle my colleague when she confronts me. Don't forget the button. If you want to lower it, it's up to you. No, we can see. Good morning, Your Honors. May it please the Court. Sarah Moehm on behalf of the Commissioner of the Social Security Administration. At issue in this case are symptoms Brown did not originally allege limited him in any way, and that are inconsistent with his own reports. So specifically, Brown alleges disability due to concentration and attention deficits. But he has been noted to have normal attention. He attends college courses. He's reported that all he does is read. Brown also alleges a closed period of disability due to carpal tunnel. But during the same period that he's alleging disability, Brown reported shoveling snow and regularly using an online social networking site. Because Brown hasn't met his burden of establishing error, and because the ALJ's decision is supported by substantial evidence, we request that the Court affirm. First, I'll discuss Brown's allegations regarding his mental impairments, both as discussed by examining physician Christmas Covell and as he alleges. And then I'll discuss his assertion of a closed period of disability. So first, with regards to the opinion of Dr. Christmas Covell, which the ALJ gave great weight, the ALJ rationally incorporated the assessments of Dr. Covell into the residual functional capacity consistent with this Court's precedent. So as this Court held in rounds, an ALJ may rely upon specific imperatives in a doctor's opinion rather than mere recommendations. And that's what the ALJ did. So looking at Dr. Covell's opinion, Dr. Covell specifically said that Brown would have no significant limitations understanding, recalling, or following through on simple tasks or in making routine judgments and decisions. Conversely, Dr. Covell found that Brown would likely have a fair amount of difficulty with complex tasks due to limitations in comprehension and difficulty with attention and distractibility. So the ALJ, considering those two specific statements, found that Brown would be able to do simple and repetitive work. Now, Brown objects that based upon observations Dr. Covell made during the examination, that Dr. Covell's opinion is actually more restrictive than it expressly states. And as was argued in the brief and here, Dr. Covell did note that Brown had some difficulty with the three-step instruction and that he had some difficulty conducting serial threes. But observations on examination are not the same as an opinion. An opinion properly considers observations on examination, properly considers the claimant's reported history, properly considers the claimant's treatment record, and utilizes all of that information to make an opinion. And that's what Dr. Covell did here. Dr. Covell noted some difficulties on examination, but also took a lengthy history and reviewed Brown's medical records. And noting only mild distractibility on examination, found that Brown would be able to do simple, repetitive work. Brown also argues that distractibility would always apply, no matter the complexity and simplicity of the tasks. But again, we can look at Dr. Covell's opinion. Dr. Covell did not qualify his statement that Brown would be able to do simple, repetitive, excuse me, simple routine work, but did qualify his statement that Brown would be able to do complex work, saying that Brown would have difficulty with it due to difficulty with attention and distractibility. So the ALJ relied upon the specific imperatives Dr. Covell made in formulating the RFC. Now, Dr. Covell also noted a number of concerns that were couched in tentative, concern-based language. And we know from this Court's holdings in Valentine and Rounds that mere recommendations or conditions under which a claimant's work might be optimized need not be included in the RFC. So in this case, Dr. Covell said, for example, that Brown's pace and persistence quote, may be impacted, that Brown quote, may have some difficulty with social interactions. And so these couched concerns that were not specific imperatives, but instead were just statements of concern or possibilities needn't be incorporated in the RFC. Nonetheless, the ALJ did consider those. For example, limiting Brown to work that was non-manufacturing style and non-pace work. Dr. Covell noted some concerns about his social interactions. So the ALJ limited Brown to work with only occasional interaction with coworkers and superficial interaction with the public. Finally, Brown points to Dr. Covell's assessment of a global assessment functioning, a functioning score of 50, or a GAF score, and says that that score indicates that Dr. Covell's opinion is more limiting than expressly stated or than included in the RFC. But the ALJ gave valid reasons to discount that GAF score, noting that GAF scores can always reflect the worst of symptom severity or functioning. And so it could be based on Brown's own subjective statements about his symptom severity. And in this case, where the ALJ provided valid reasons to discount Brown's subjective statements, that's particularly important in evaluating the GAF score. And the ALJ also noted that there's no direct correlation from a GAF score to the agency's disability analysis. So the GAF score doesn't identify any specific functional limitations. The GAF score, likewise, doesn't have any direct correlation to the agency's listing, for example. So the ALJ gave valid reasons to discount GAF. In sum, the ALJ's interpretation of Dr. Covell's opinion was rational. And even if there are altering interpretations, as this court held in Birch and recently reiterated in Scheibe, excuse the pronunciation, rational interpretations of the evidence should be credited. So now I'll move to the ALJ's evaluation of Brown's subjective complaints. So as was discussed, Brown alleges that he is unable to sustain tension and concentration sufficient to maintain work. But the ALJ gave valid reasons to discount that allegation. First, Brown made statements to the agency and participated in activities that undermine that statement. So Brown took classes at community college. He once reported, quote, all I do is read books. Although he said he had difficulties watching TV at the hearing, elsewhere he reported he spends the entire day watching movies. In 2009 and 2010, when he completed function reports that were submitted to the agency, he denied any difficulties with concentration. And his mother, likewise, denied that Brown had any difficulties with concentration in 2010. The ALJ also considered the objective evidence in evaluating Brown's subjective complaints. So, for example, one treatment provider noted that Brown's attention and concentration was within normal limits. Dr. Cavell noted only mild issues with distractibility and specifically stated Brown would have no issues understanding, recalling, or following through on simple tasks. And the state agency physician, Dr. Donahue, who also evaluated Dr. Cavell's opinion, specifically stated that Brown would be able to sustain work for two hours at a time, which is what's required. In sum, the ALJ provided valid reasons to discount Brown's subjective allegations of his symptoms. Finally, I'll turn to Brown's allegation of a closed period of disability due to carpal tunnel syndrome. So, we know from this court's decision in Matthews that the mere existence of an impairment does not establish limitations. And we also know from this court's holding in Valentine that Brown has the burden of proof of establishing disability. And although Brown attempts to do that by pointing to treatment notes and the opinions of Dr. Dittmer, he does not establish restrictions inconsistent with those contained in the RFC. So, for example, Brown points to the fact that he had the severe impairment of carpal tunnel syndrome and also that he said once that he can't open a can of pop. But as the court discussed earlier, examination revealed that he had full range of motion of his fingers and wrists. He has no muscle atrophy. He had normal strength. And moreover, Brown made some reports during this alleged period of disability, this alleged closed period of disability that are not consistent with his allegation that he can't open a can of pop. For example, in March 2011, he reported to one provider that he was shoveling snow. That's at transcript page 1127. A couple months prior to that, he reported that he was using an online social networking site, which indicates that he was getting on the computer or phone or something. That's at transcript page 1009. Brown also points to the opinions of Dr. Dittmer, but as discussed in the briefs, the ALJ gave valid reasons to discount those opinions, and those reasons were not contested by Brown. So, in sum, the ALJ, Brown has not established, met his burden of proof that the mere existence of his impairment of carpal tunnel syndrome establishes limitations inconsistent with the RFC. Unless the court has any questions. Thank you. Thank you. The ALJ accepted Dr. Dittmer's explanation that the carpal tunnel syndrome was moderate to severe on the right and moderate or mild to moderate on the left and required surgery. So she did accept that. That's not saying she accepted Dittmer's functional assessments later on, but she did accept that finding of the moderate to severe carpal tunnel syndrome in March 2010. Again, if it required surgery a year and a half later, there's a stretch of time where he couldn't possibly have been doing frequent handling as would be required for all the soldering jobs and bench work that the VE identified and identified. The GAF of 50 becomes important because in the context of these findings that Dr. Cavell made, even the tentative so-called fair amount of difficulty with attention and tractability or might be impaired in attendance and persistence, the GAF 50 in that context suggests he can't sustain work. That's a way of the doctor expressing the seriousness of the impairment. If he could do simple tasks or simple instructions, Dr. Cavell demonstrated clinically he couldn't do three-step tasks. This has to be an R1, reasoning level one, RFC assessment or simply at least include within the RFC assessment limited to two-step simple instructions because that would affect the job base that could be discovered. There was only one of the VE's identified jobs table worker which might be R1. The VE gave the wrong number in the dictionary of occupational titles and some of the table workers are R2 and some are R1. But even at best, the national numbers and local numbers would be too low for significant. They're below the Gutierrez benchmark of 25,000 nationally. And if there's no further questions, I think that's it. Thank you very much. Thank you both for the argument. It's very well briefed and of course as we know in these cases depends so significantly on the record so we will of course go back and be looking at the record again. Thank you. Case just argued is submitted, Brown versus Berryhill and we'll now hear argument in First Citizens versus Wilson.
judges: Hawkins, McKeown, Foote